1  LESTER J. MARSTON – California SBN 081030
   RAPPORT AND MARSTON
2  405 West Perkins Street
   Ukiah, CA 95482
3  Telephone: 707-462-6846
   Facsimile: 707-462-4235
4  e-mail: marston1@pacbell.net

5  Attorney for Picayune Rancheria of Chukchansi Indians

6  DAVID J. RAPPORT – California SBN 054384
   RAPPORT AND MARSTON
7  405 West Perkins Street
   Ukiah, CA 95482
8  Telephone: 707-462-6846
   Facsimile: 707-462-4235
9  e-mail: drapport@pacbell.net

10 Attorney for Chukchansi Indian Housing Authority

11              **UNITED STATES DISTRICT COURT**

12              **DISTRICT COURT OF ARIZONA**

13 The PICAYUNE RANCHERIA OF          ) Case No.
   CHUKCHANSI INDIANS, a federally    )
14 recognized Indian Tribe, and the   )
   CHUKCHANSI INDIAN HOUSING          ) COMPLAINT FOR DECLARATORY AND
15 AUTHORITY, a tribally designated   ) INJUNCTIVE RELIEF
   housing entity,                    )
16                                    )
                                      )
17              Plaintiffs,           )
                                      )
18 v.                                 )
                                      )
19 SANDRA B. HENRIQUEZ, Assistant     )
   Secretary for Public and Indian    )
20 Housing, UNITED STATES             )
   DEPARTMENT OF HOUSING AND          )
21 URBAN DEVELOPMENT,and              )
   ROGER J. BOYD, Deputy Assistant    )
22 Secretary, OFFICE OF NATIVE        )
   AMERICAN PROGRAMS, and             )
23 CAROLYN J. O'NEIL, Administrator,  )
   SOUTHWEST OFFICE OF NATIVE         )
24 AMERICAN PROGRAMS,                 )
                                      )
25              Defendants.           )
   _____     )
26

27

28

**INTRODUCTION**

1.      This is an action brought by the Picayune Rancheria of Chukchansi Indians ("Tribe"), a federally recognized Indian Tribe, and the Chukchansi Indian Housing Authority ("CIHA")[1], a tribally designated housing entity ("TDHE") created by the Tribe to provide safe, sanitary and decent housing for the Tribe's members, against the United States Department of Housing and Urban Development ("HUD"), acting through its officials, Sandra Henriquez, Assistant Secretary for HUD's Office of Public and Indian Housing, Rodger J. Boyd, Deputy Assistant Secretary for HUD's Office of Native American Programs  ("ONAP") and Carolyn J. O'Neil ("O'Neil"), Administrator, for HUD's Southwest Office of Native American Programs ("SWONAP"). HUD, ONAP AND SWONAP shall hereafter be referred to collectively as the "Government."

On August 23, 2013, without providing the Tribe or the CIHA notice or an opportunity to challenge the decision ("Decision"), the Government revoked the CIHA"s access to the Line of Credit Control System ("LOCCS"), by which the CIHA withdraws its Indian Housing Block Grants funds awarded by HUD to CIHA, pursuant to the Native American Housing Assistance and Self-Determination Act, 25 U.S.C. § 4101 et seq.("NAHASDA"). Prior to August 23, the Government approved specifically named tribal and CIHA officials to access LOCCS to transfer to CIHA's bank account its funds through the LOCCS. In rendering the Decision, O'Neil stated that the Government was revoking CIHA's LOCCS access because the Government had been informed by the Bureau of Indian Affairs ("BIA") that appeals of BIA decisions by disputing factions within the Tribe's governing body, its Tribal Council, prevent BIA from recognizing a governing body of the Tribe and therefore, the Government was without authority to authorize tribal or CIHA officials to access LOCCS.

In its letter revoking CIHA's access to the LOCCS, the Government states that it

[1]The Tribe and the CIHA shall hereafter be referred to as the "Indians."

is its policy to rely on the BIA to determine the recognized governing body of the Tribe and this recent information from the BIA compels HUD immediately, without prior notice or any opportunity for a hearing, to revoke LOCCS access for those officials which the Government had recognized as authorized to access LOCCS. The Government has not referenced any regulation, written policy or guidance that contains this policy. The CIHA officials with approved LOCCS access prior to August 23, 2013, were appointed to their positions before the BIA appeals were filed and had been recognized by the Government before the BIA appeals were filed.

In reliance on the Indian Housing block grants approval by the Government to the CIHA, the CIHA maintains housing programs for low income tribal members and has entered into contracts to provide additional housing for homeless and low income Indians.

The Government's actions revoking the CIHA's LOCCS access are in  violation of NAHASDA, the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq.,  the Due Process Clause of the 5th Amendment to the United States Constitution, and the Government solemn trust obligations to the Tribe. CIHA and the Tribe seek an order directing the Government to immediately restore the LOCCS access to the tribal and CIHA officials who were approved by HUD and the Tribe for such access before the alleged leadership dispute began and the Tribe seeks an order directing the Government to recognize the last tribal government acknowledged by the BIA to be the duly constituted Tribal Council of the Tribe before the alleged leadership dispute arose.

Unless the Government's illegal actions are enjoined, the Indians have suffered and will continue to suffer irreparable harm in that the CIHA and its tribal members who receive and are eligible to receive federally funded housing assistance from CIHA will be denied the use of the grant funds awarded to the Indians to provide safe, sanitary and decent housing to the members of the Tribe. Unless HUD is compelled to

restore LOCCS access those impacts will continue, construction on the CIHA's housing projects will stop, contractor's will not be paid, people will lose their jobs and homeless tribal members eligible for the CIHA's housing programs will be denied desperately needed low income housing.

## JURISDICTION

2.      The Court's jurisdiction over the Indians Claims ("Tribal Claims") are based upon the following:

(a)    28 U.S.C. § 1331, in that the Tribal claims arise under the Constitution and laws of the United States;

(b)    28 U.S.C. § 1337, in that this action arises out of Acts of Congress regulating commerce with Indian tribes, pursuant to the Indian Commerce Clause, Article I, Section 8, cl. 3 of the United States Constitution;

(c)    28 U.S.C. § 1361, in that the Indians seek to compel officers and employees of the United States and its agencies to perform duties owed to the Indians pursuant to  25 U.S.C. § 4101, *et seq.*;

(d)    28 U.S.C. § 1362, in that the Tribe is a federally recognized Indian tribe that asserts that the Government's  actions are inconsistent with the Constitution and laws of the United States.

## VENUE

3.      Venue is proper in the District of Arizona, pursuant to 28 U.S.C. § 1391(e), in that the Government officials who made the Decision to deny the Indians access to the LOCCS are officers of the United States acting in their official capacity and a substantial part of the events or omissions giving rise to the Tribal Claims occurred in this District.

## PARTIES

4.      Plaintiff, Picayune Tribe of Chukchansi Indians, is a federally recognized Indian tribe, recognized by the Secretary of the United States Department of the Interior as maintaining a government-to-government relationship with the Tribe.

5.      Plaintiff, Chukchansi Indian Housing Authority, is a tribal housing authority originally established in 1997 by the tribal Ordinance No. 1997-01 which was repealed and replaced by an ordinance and Articles of Incorporation ("Housing Authority Ordinance"), adopted on March 15, 2012, by Tribal Council Resolution No. 2012-48. CIHA is a separate non-profit corporation and the Tribe's TDHE as authorized by the NAHASDA, and its implementing regulations.

6.      Defendant, United States Department of Housing and Urban Development, is a department of the federal government of the United States.

7.      Defendant, Sandra Henriquez, is the Assistant Secretary for HUD's Office of Public and Indian Housing.  She is being sued in her official capacity.

8.      Defendant, Rodger J. Boyd, is the  Deputy Assistant Secretary for HUD's Office of Native American Programs.   He is being sued in his official capacity.

9.      Defendant, Carolyn J. O'Neil, is the Administrator for HUD's Southwest Office of Native American Programs. She is being sued in her official capacity.

10.     Defendants Henriquez, Boyd and O'Neil are officers or employees of HUD who have direct or delegated statutory duties or responsibilities for carrying out the provisions of 25 U.S.C. § 4101 et seq., and its implementing regulations, 24 C.F.R. Part 1000, and for fulfilling the trust responsibilities of the United States of America to the Indians imposed by NAHASDA.

## **GENERAL ALLEGATIONS**

11.     The Tribe is a federally recognized Indian tribe organized under the provision of the Indian Reorganization Act, 25 U.S.C. § 476, under a written constitution that has been approved by the Secretary of the Interior and which

designates the Picayune Tribal Council ("Tribal Council") as the governing body of the Tribe.

12.     Pursuant to the authority granted to it under the Constitution, the Tribal Council has adopted a set of By-laws implementing the provisions of the Constitution with regard to the Tribal Council's meetings.

13.     The Tribal Council has also enacted an Ethics Ordinance to govern the conduct of Tribal Council members.

14.     On January 24, 2013, a leadership dispute arose among the duly elected members of the Tribe's Tribal Council in which various members of the Tribal Council attempted to suspend other members from the Tribal Council.  None of the suspensions were carried out in conformity with the requirements of the Tribe's Constitution and By-Laws.

15.     At the time that the leadership dispute arose, the members of the Tribal Council were Nancy Ayala, Chair; Reggie Lewis, Vice Chair; Tracey Brechbuehl, Secretary; Karen Wynn, Treasurer; Charles Sargosa, Council Member at Large,  Chance Alberta, Council Member at Large, and Carl Bushman, Council Member at Large.

16.     As a result of the dispute, two groups claim to be lawful Tribal Council with the authority to act in that capacity.

17.     One group maintains that the acting Tribal Council consists of Ayala, Wynn, Brechbuehl, and Sargosa ("Ayala Council Quorum").

18.     The other group maintains that the acting Tribal Council consists of Lewis, Bushman, and Alberta ("Lewis Faction").

19.     The Ayala Council Quorum can establish a quorum of the Tribal Council under Article VI, Section 2 of the Tribe's Constitution.  The Lewis Faction cannot establish a quorum of the Tribal Council under Article VI, Section 2 of the Constitution.

20.     The dispute as to the leadership of the Tribe was the subject of two lawsuits filed in the Tribe's Tribal Court: *Picayune Rancheria of Chukchansi Indians v. RaboBank, et al*, Picayune Tribal Court Case No. 2013-001, and *Picayune Rancheria of Chukchansi Indians, et al, v. Yosemite Bank, et al*, Picayune Tribal Court Case No. 2013-005 ("Tribal Court Actions").The Tribal Court Actions were conducted in compliance with the Tribal Court Ordinance adopted prior to the leadership dispute arising and the Court's rules of Pleading, Practice and Procedure adopted in March of 2013. Those procedures provided notice and due process rights in full compliance with the Indian Civil Rights Act, 25 U.S.C. §1302, to all named parties, which included the members of the Lewis Faction.

21.     In both of the Tribal Court Actions, the Tribal Court concluded that, because the Ayala Council Quorum can establish a quorum of the Tribal Council and the Lewis Faction cannot, the Ayala Council Quorum is the duly elected and constituted Tribal Council.

22.     The CIHA is the TDHE authorized by the Tribe to receive and administer Indian Housing Block Grants awarded to the Tribe under NAHASDA. NAHASDA is administered by HUD through ONAP.  CIHA is within the SWONAP.

23.     CIHA receives an annual Indian Housing Block Grant from SWONAP, including a grant for fiscal year 2013. Grants awarded in previous years do not lapse, if not fully expended, and carry forward from year-to-year. CIHA was awarded $954,966 for fiscal year 2013 and has unexpended funds totaling $$2,956,212.88, including its current grants and funds remaining from previous years. CIHA is required by NAHASDA and its implementing regulations to use the block grant funds to provide affordable housing assistance to low income Indian families. CIHA has been operating the Tribe's federally assisted housing programs since 1997 under a tribal ordinance establishing it has a housing authority and corporate entity separate and apart from

the Tribe, and governed by a five member Board of Commissioners ("BOC"), appointed by the Tribe's Tribal Council. The ordinance was repealed and replaced amended on March 15, 2012. At that same time, three of the five members of the Board of Commissioners (Helen Flores, Michael Wynn and Orianna Walker) were appointed for two year terms ending on February 28, 2014. On April 22, 2013, in Resolution No. 2013-99, the Ayala Quorum Council appointed Cheryl Aleman and David Jimenez to two year terms on the Board of Commissioners, commencing on April 22, 2013, and ending on February 23, 2015.

24.     The CIHA provides many types of housing assistance to low income tribal members, including lease-to-own houses, low income rentals, housing and utility assistance grants and housing repairs. It has expended and requires additional funds for two major projects currently underway. In one project CIHA has acquired through the Federal Emergency Management Agency ("FEMA") six housing units. It is currently in the process of preparing sites and foundations to install these units which will provide emergency and transitional housing for homeless tribal members. There are currently 29 homeless tribal members on a waiting list to occupy these units. In the other project the CIHA is purchasing two parcels for an 88 unit low rent project. It has already expended substantial sums performing environmental studies and applying for necessary zoning changes from Madera County. Under its purchase agreement it must make substantial infrastructure improvements before escrow can close.

25.     Recipients of Indian Housing Block Grants, such as CIHA, access those funds through ONAP's electronic funds transfer system called the Line of Credit Control System or LOCCS.  Specific Tribal and CIHA officials have been authorized by SWONAP to access those funds, including Nancy Ayala, Helen Flores, Michael Wynn and Don Ctibor, CIHA's Executive Director. Helen Flores has had approved access to the LOCCS since April 29, 2011. Nancy Ayala has had approved access since September

11, 2012. Michael Wynn, the current chairman of the BOC, has had approved access since April 29, 2013.

26.    On August 23, 2013, CIHA received a letter from Carolyn J. O'Neil, Administrator for SWONAP, dated August 22, 2013,("the O'Neil Letter" or "Decision") notifying Don Ctibor that SWONAP was revoking access to the LOCCS of all individuals who were previously authorized to access the CIHA 's IHBG funds, including Nancy Ayala, Helen Flores, Michael Wynn, and any other member of CIHA's BOC or staff including Mr. Ctibor. A true and correct copy of the O'Neil Letter is attached hereto as Exhibit A. The O'Neil letter was prepared and the Decision to deny the CIHA access to the LOCCS accounts was made in Phoenix, Arizona. The revocation was made effective immediately and even applied to a draw down request for $61,024.91 submitted by CIHA on August 20, 2013. CIHA was given no prior notice or any opportunity for a hearing before SWONAP took this action.

27.    The effects of this sudden termination of CIHA's access to its IHBG funds through the LOCCS has been devastating and threatens to cause additional and immediate irreparable harm to the Indians. The impacts were described in detail to the Government in an email from CIHA's legal counsel to ONAP Legal Counsel, Jad Atallah. A true and correct copy of that email is incorporated by this reference and attached hereto as Exhibit B. See pp. 2-3.  When it received the O'Neil letter, CIHA had a total of $59,000 in the bank. It had over $50,000 in outstanding bills, including payroll and payroll taxes, office expenses, utilities and a payment due for the HUD required annual audit. In addition, it has pending contract payments for grading and the installation of utility infrastructure for the FEMA project of more than $143,000. It also lacks the funds to approve 14 pending applications from low income tribal members for emergency assistance for utilities, move-in assistance for homeless tribal members to move into housing and existing home repairs. In addition, a down-

payment assistance grant for a low income tribal family cannot now be funded which will result in a breach of the purchase agreement. Finally, one rental unit was recently vandalized with all its windows broken. As a result of the revocation of LOCCS and grant access, CIHA has no available funds to board up or otherwise protect that house.

28.     The O'Neil Letter states that SWONAP has taken this action because it has been informed by the BIA that a dispute among Tribal Council members has arise resulting in an appeal to the Regional Director of the Pacific Regional Office of the BIA which prevents the Central California Agency of the BIA from recognizing a tribal government for the Tribe. The O'Neal Letter states that until BIA makes a final determination as to the make-up of the Tribal government, the Government cannot recognize any tribal or CIHA official as authorized to access LOCCS and on that basis revokes CIHA's access to the LOCCS.

29.     On August 29, 2013, CIHA's Legal Counsel emailed Exhibit B to Jad Atallah, the Attorney/Advisor in the Office of Assisted Housing and Community Development within the HUD office of General Counsel, who was assigned to advise the Government on its response to the appeal within the BIA. In a telephone conversation on September 4, 2013, CIHA's Legal Counsel discussed the contents of Exhibit B with Mr. Atallah. CIHA's counsel was told that the Government would not restore CIHA's access to the LOCCS, unless the BIA notifies the Government that it now recognizes a tribal government for the Tribe or CIHA is able to obtain an agreement from the disputing factions of the Tribal Council to identify CIHA officials who are authorized by the Tribe to access the LOCCS. Mr. Atallah would not identify an administrative remedy available to CIHA that would provide prior notice and an opportunity for a hearing before the revocation of CIHA's access to the LOCCS is revoked. He stated that the Government has no evidence that CIHA is in substantial non-compliance with NAHASDA requirements and the Government does not contend

that CIHA is failing to spend its Indian Housing Block Grant on affordable housing activities in full compliance with NAHASDA.

30.     On or about September 9, 2013, CIHA's legal counsel faxed a letter to defendants Henriquez and Boyd requesting restoration of LOCCS access for the tribal and CIHA officials who had that access prior to August 22, 2013, until CIHA has been given prior notice and been allowed to exhaust full hearing rights, or until the BIA recognizes a governing body of the Tribe that changes the composition of the BOC or those officials authorized for LOCCS access in accordance with the Housing Authority Ordinance. A true and correct copy of the letter to Henriquez and Boyd is attached hereto as Exhibit C.

## FIRST CAUSE OF ACTION

### [Violation of NAHASDA]

31.     The Indians reallege each of the allegations set forth in paragraphs 1-30 above and, by this reference, incorporate each such allegation herein as if set forth in full.

32.     In a letter dated August 22, 2013, to Don Ctibor, Executive Director of CIHA, Carolyn J. O'Neil informed Ctibor that HUD revoked access to the LOCCS to all individuals who were previously authorized to access the CIHA's Indian Housing Block Grant funds, effectively cutting off for an indeterminate period of time NAHASDA funding to the CIHA.

33.     Title 25 of the United States Code §4161 and the regulations implementing NAHASDA ("Regulations") mandate that, in order to suspend or terminate funding to a tribe, HUD must first find that the tribal recipient of NAHASDA funding has failed to "comply substantially" with the requirements of NAHASDA, 25 U.S.C. § 4161(a), and its implementing regulations, 24 C.F.R 1000.532, 24 C.F.R 1000.534.

34.     The Government has not found that CIHA  has failed to comply substantially with the requirements of NAHASDA and the Regulations as the basis for its revocation of CIHA's access to the LOCCS and grant funds.

35.      24 C.F.R 1000.530 also requires that, prior to the imposition of any of the sanctions set forth in  25 U.S.C. § 4161(a), the Government must take at least one of a number of actions designed to assist the tribal  recipient  in resolving the alleged performance problem, including issuing a letter of warning advising the recipient of the performance problem and describing the corrective actions that the Government believes should be taken, recommending that the tribe suspend, discontinue, or redirect funding from the activities that are not being carried out in compliance with NAHASDA, and/or seek technical assistance to overcome the performance problem.

36.     The Government did not take any of the actions required under 24 C.F.R 1000.530 before suspending CIHA's NAHASDA funding.

37.     25 U.S.C. § 4161 and 24 C.F.R. § 1000.532 also provides that, before imposing sanctions for failure to comply substantially with the requirements of NAHASDA, the Government must provide a recipient that has been found to have failed to comply substantially with the requirements of NAHASDA with notice in writing of the action it intends to take and provide the recipient an opportunity for an informal meeting to resolve the performance problem and an opportunity for a hearing no less than 30 days prior to taking the proposed action.

38.     The Government did not provide IHA with notice of its intention to suspend the Tribe's NAHASDA funding or CIHA's right to engage in an informal meeting with HUD to resolve the performance problem and a formal hearing to resolve any alleged failure to comply substantially with the requirements of NAHASADA.

39.     An actual controversy exists between the Indians and the Government in that the Indians contend that the Governments' refusal to provide the CIHA access to

the LOCCS and NAHASDA funding to which it is entitled is a direct violation of the

provisions of NAHASDA, while the Government claims that its actions are lawful.

40.     Unless the Government, its officers, agents and employees are

provisionally and permanently restrained and enjoined from: (a) revoking access to the

LOCCS by the CIHA and all individuals who were previously authorized to access the

CIHA's Indian Housing Block Grant funds; (b) effectively refusing to provide

NAHASDA funding to the CIHA without meeting the requirements of NAHASDA or

the Regulations, and (c) effectively terminating access to funding to an eligible TDHE

recipient, the CIHA, the Tribe, the members of the Tribe receiving or approved for or

eligible for housing assistance, and the CIHA contractors will suffer severe and

irreparable injury, for which they have no plain, speedy or adequate remedy at law in

that the CIHA will be unable to provide housing assistance to low income tribal

members on the Reservation, tribal members will remain homeless, the Tribe's

Housing Plan will be effectively nullified, the purposes for which Congress enacted

NAHASDA will be frustrated and numerous persons working on the housing

construction site will lose their jobs.

WHEREFORE, the Indians pray as hereinafter set forth.

## SECOND CAUSE OF ACTION

## [Violation of the Administrative Procedure Act]

41.     The Indians reallege each of the allegations set forth in paragraphs 1-40

above and, by this reference, incorporates each such allegation herein as if set forth in

full.

42.     The Government has a statutory obligation to provide CIHA with

NAHASDA funding unless: the Government concludes that CIHA has failed to comply

substantially with the requirements of NAHASDA, the Government takes at least one

of the actions set forth in 24 C.F.R 1000.530 to assist IHA in resolving the alleged

performance problem, and the Government provides notice of the Government's intention to terminate NAHASDA funding and an opportunity for an informal meeting and a hearing to address the alleged failure to comply substantially with the requirements of NAHASDA.  Notwithstanding these statutory and regulatory obligations, the Government, acting through HUD officials, has refused to provide NAHASDA funding to IHA in violation of 25 U.S.C. § 4161(a), 24 C.F.R 1000.530, 24 C.F.R. 1000.532, and 24 C.F.R. 1000.534.

43.   The Government's sole basis for refusing to provide NAHASDA funding to the CIHA and denying CIHA access to the LOCCS and its grant funds is that there is alleged to be a dispute as to who constitutes the Tribe's duly elected Tribal Council. This asserted basis for refusing to provide NAHASDA funding to the CIHA is not an act of the tribal recipient and does not qualify as a failure of CIHA to comply substantially with the requirements of NAHASDA.

44.   The Government's basis for  refusing to provide NAHASDA funding to the CIHA is not set forth in the NAHASDA or the Regulations. Neither NAHASDA nor its implementing regulations prohibit the Government from independently determining which recipient officials have authorized LOCCS access or allow the Government to revoke LOCCS access by recipient officials who had that approved access based on actions taken by the Tribal government elected in a Tribe's last uncontested election. The Government's refusal to provide NAHASDA funding to the CIHA without authorization from any statute or duly promulgated regulation is a violation of 25 U.S.C. § 4161(a), 24 C.F.R. 1000.530, 24 C.F.R. 1000.532, and 24 C.F.R. 1000.534, and is, therefore, arbitrary, capricious, and contrary to applicable law, in violation of the Administrative Procedures Act, 5 U.S.C. §701 et seq.

45.   An actual and substantial controversy exists between the Indians and the Government in that the Indians contend that the Governments actions  are arbitrary,

capricious, and contrary to the law, while the Government contends that its actions are not arbitrary, are within allowable discretion, and are otherwise consistent with applicable law.

46.     Unless the Government, its officers, agents and employees, are provisionally and permanently restrained and enjoined from refusing to provide to the CIHA NAHASDA funding without meeting the requirements of NAHASDA or the Regulations for suspending or terminating funding to a TDHE, the CIHA, the Tribe and the members of the Tribe will suffer severe and irreparable injury, in that the CIHA will be unable to implement the Tribe's Housing Plan to provide housing assistance to low income tribal members on the Reservation, and will be unable to pay its operating expenses and its contractors, with the result that people will lose there jobs, the CIHA will breach the contracts it has entered into and tribal members will continue to remain homeless.

WHEREFORE, the Indians pray as hereinafter set forth.

### THIRD CAUSE OF ACTION
### [Violation of Due Process Rights under Fifth Amendment]

47.     The Indians reallege each of the allegations set forth in paragraphs 1-46 above and, by this reference, incorporates each such allegation herein as if set forth in full.

48.     CIHA has been operating the Tribe's federally assisted housing programs since 1997.

49.     CIHA receives annual Indian Housing Block Grants from SWONAP. Grants awarded in previous years do not lapse, if not fully expended, and carry forward from year-to-year. CIHA was awarded $954,966 for fiscal year 2013 and has unexpended funds totaling $2,956,212.88, including its current grant and funds remaining from previous years.

50.    CIHA has a constitutionally protectible property right in the grant funding from 2013 and from previous years.   CIHA can only be deprived of the use of that property right after it has been afforded the procedural due process rights mandated by the Fifth Amendment to the United States Constitution: timely and adequate notice detailing the reasons for the proposed action and an opportunity for a pre-deprivation hearing before an impartial decision maker to challenge the Government's Decision to deprive CIHA the use of its Indian Housing Block Grant funding.

51.    The Government did not provide CIHA with prior notice of its reasons for revoking CIHA's access to the LOCCS.

52.    The Government did not provide CIHA with a hearing meeting due process standards before depriving CIHA of the use of its property right. Nor did the Government provide the CIHA an opportunity for a hearing before an impartial decision maker  before depriving CIHA of its property right .

53.    An actual and substantial controversy exists between the Indians and Government in that the Indians contend that the Government failed to provide CIHA with constitutionally mandated due process procedures before depriving the Indians of their constitutionally protectible property interest in the use of its grant funds, while the Government contends that its actions are within allowable discretion, and  are otherwise consistent with applicable law.

54.    Unless the Government is provisionally and permanently restrained and enjoined from denying the CIHA access to the LOCCS and grant funds without providing CIHA with constitutionally mandated due process procedures, CIHA, the Tribe and the members of the Tribe will suffer severe and irreparable injury for which the Indians have no plans, adequate or speedy remedy at law, in that the CIHA will be denied their right to be able to access their funds to operate their CIHA, thereby

depriving the Indians of being able to provide safe, sanitary and decent housing for its low income tribal members.

### FOURTH CAUSE OF ACTION
### [Recognition of Last Acknowledged Tribal Government]

55.    The Indians reallege each of the allegations set forth in paragraphs 1-54 above and, by this reference, incorporates each such allegation herein as if set forth in full.

56.    The Government's sole basis for denying access to the LOCCS to all individuals who were previously authorized to access the CIHA's Indian Housing Block Grant funds, thereby effectively refusing to provide NAHASDA funding to the CIHA, is that there is alleged to be a dispute as to who constitutes the Tribe's duly elected Tribal Council which must be resolved by the BIA.

57.    Under federal common law, the Government is required, for the purposes of maintaining the government to government relationship between the Government and the Indians, to acknowledge the last tribal council of the Tribe that was elected at the last undisputed election, which is the Ayala Council Quorum until the current leadership dispute is resolved.

58.    An actual and substantial controversy exists between the Indians and the Government in that the Indians contend that the Government's actions revoking the CIHA's access to the LOCCS and its grant funds are contrary to federal common law, while the Government contends that its actions are consistent with applicable law.

59.    Unless the Government is provisionally and permanently restrained and enjoined from refusing to recognize the last undisputed Tribal Council of the Tribe, consisting of Nancy Ayala, Tracey Brechbuehl, Karen Wynn, and Charles Sargossa, who constitute a quorum of the Tribal Council elected in the Tribe's December, 2012 election, the last undisputed Tribal Council of the Tribe, the defendants will continue to refuse to provide CIHA with the NAHASDA funding to which it is entitled, and

CIHA, the Tribe and the members of the Tribe will suffer severe and irreparable injury, in that the CIHA will be unable to provide housing assistance to low income tribal members on the Reservation.

## FOURTH CAUSE OF ACTION
### [Declaratory Relief Regarding the Recognition of the Tribal Court's Orders ]

60.     The Indians realleges each of the allegations set forth in Paragraphs 1 through 59 above, and by this reference incorporates those allegations herein as if set forth in full.

61.     Pursuant to the doctrine of comity, federal courts and federal agencies are obligated to recognize and enforce tribal court judgments as long as: (1) the tribal court had personal jurisdiction over the parties; (2) the tribal court had subject matter jurisdiction over the claims; and (3) the parties were provided with due process.

62.     The Tribe's Tribal Court had personal jurisdiction over the Lewis Faction in *Picayune Rancheria of Chukchansi Indians v. RaboBank, et al*, Picayune Tribal Court Case No. 2013-001, and *Picayune Rancheria of Chukchansi Indians, et al, v. Yosemite Bank, et al*, Picayune Tribal Court Case No. 2013-005, in that the Tribal Court had personal jurisdiction over Reggie Lewis, Chance Alberta, and Carl Bushman ("Individual Defendants"), as the "Individual Defendants are members of the Tribe who where personally served with a copy of the Tribal Court's summons and complaint.

63.     The Tribal Court had subject matter jurisdiction over the claims raised by the Tribe in the Tribal Court Actions, pursuant to the Law and Order Code of the Tribe, Title I, Chapter 1, Sections 1-2-1 through 1-2-7, in that the Tribe plead a cause of action against the Individual Defendants for interfering with the ability of the Tribe to govern itself.

64.     The Individual Defendants were provided with due process of law

throughout the Tribal Court Actions. The Tribal Court conducted all of the proceedings before it pursuant to Tribal Court's rules of procedure that mirror the Federal Rules of Civil Procedure and the Federal Rules of Evidence. During the Tribal Court proceedings, the Individual Defendants were provided with notice and the opportunity to be heard.  Legal counsel for the Individual Defendants was given notice of and an opportunity to participate in the hearings conducted by the Tribal Court on the Tribe's motions for a temporary restraining order or preliminary injunction filed in the Tribal Court Actions. The Individual Defendants refused to participate in the hearings.  The Individual Defendants did not submit any evidence or argument to the Tribal Court in opposition to the Tribe's motions. The Individual Defendants did not challenge the Tribal Court's jurisdiction over themselves or the Tribe's claims.

65.     The Tribal Court's orders entered in the Tribal Court Actions are, therefore, entitled to comity, recognition, and enforcement by the Government and by this Court.

66.     After the Government froze the LOCCS and denied the CIHA access to its grant funds, the CIHA through its attorney, provided the Government with a copy of the Tribal Court's orders entered in the Tribal Court Actions and demanded that the Government recognize and give effect to the Tribal Court's determination that the Ayala Quorum Council was the lawful governing body of the Tribe.

67.     The Government, then refused to recognize and give effect to the lawful orders of the Tribal Court entered in the Tribal Court Actions that declared that the Ayala Quorum Council was the governing body of the Tribe.

68.     An actual and substantial controversy exists between the Indians and the Government in that the Indians contend that the Tribal Court's orders entered in the Tribal Court Actions are entitled to comity, recognition, and enforcement by the Government and by this Court, while the Government contends that the Tribal Court's

orders not are entitled to comity, recognition, and enforcement by the Government and by this Court.

69.     Unless the Government is provisionally and permanently restrained and enjoined from refusing to recognize the Tribal Court's orders, entered in the Tribal Court Actions, the Government will continue to refuse to provide CIHA with the NAHASDA funding to which it is entitled, and  CIHA, the Tribe and the members of the Tribe will suffer severe and irreparable harm, in that the CIHA will be unable to provide housing assistance to low income tribal members on the Reservation.

## SEVENTH CAUSE OF ACTION

### [Breach of Trust]

70.     The Indians  reallege each of the allegations set forth in paragraphs 1-69 above and, by this reference, incorporate each allegation herein as if set forth in full.

71.     The NAHASDA and the Regulations place a fiduciary duty on the Government to provide funding to a tribal housing grant recipient unless the Government finds that the tribal recipient of NAHASDA funding has failed to comply substantially with the requirements of NAHASDA.

72.     The Government has revoked access to HUD's LOCCS to all individuals who were previously authorized to access the CIHA's Indian Housing Block Grant funds, without reaching a finding that CIHA had  failed to comply substantially with the requirements of NAHASDA.

73.     The Government's action effectively suspends CIHA's funding without reaching a finding that  CIHA had  failed to comply substantially with the requirements of NAHASDA, preventing the Tribe and CIHA from providing low income housing services to the Tribe's tribal members, and causing severe harm to the Indians by stopping the Indians current housing projects and existing housing services to its tribal members, without meeting the requirements of the applicable federal law and

regulations.

74.     The Government's actions are a breach of the Government's fiduciary obligation to carry out the Government's mandatory duties under the NAHASDA in a fair and equitable manner consistent with the Fifth Amendment of the United States Constitution.

75.     The Government's suspension of the CIHA's funding also constitutes a breach of the Government's fiduciary trust obligation imposed upon the Government's under the NAHASDA.

76.     An actual controversy exists between the Indians and the Government  in that the Indians contend that the Government owes the Tribe, CIHA, and the Tribe's members a continuing trust duty to provide funding for low income housing to the Tribe, CIHA, and the Tribe's members pursuant to the grant contracts entered into between the parties under the NAHASDA, while the Government contend that they owe no such fiduciary duty to the Indians.

77.     Unless the Government is provisionally and permanently restrained and enjoined from revoking access to HUD's LOCCS without reaching a finding that CIHA had  failed to comply substantially with the requirements of NAHASDA; the Tribe, CIHA, and the Tribe's members will be denied low income housing funding that is required under the NAHASDA, and the Regulations, and the efforts of the Tribe to provide low income housing to tribal members on the Reservations will be thwarted.

WHEREFORE, the Tribe prays as hereinafter set forth.

## **PRAYER FOR RELIEF**

Plaintiffs pray that judgment be entered against the Government as follows:

1.     Declaring that the actions of the Government in revoking the Indians LOCCS access violated the NAHASDA, the Fifth Amendment to the United States Constitution, the Administrative Procedure Act, federal common law and the United

States trust obligations owed to the Indians;

2.    Declaring that the Government has a mandatory duty to recognize the Tribe's Tribal Court Order declaring the Ayala Tribal Council Quorum as the lawful governing body of the Tribe;

3.    Granting a temporary restraining order and preliminary and permanent injunctive relief ordering the Government to provide the Indians with immediate access to the LOCCS system;

4.    Ordering  the Government to recognize the Ayala Quorum Council as the Tribal Council elected at the last undisputed election of the Tribe;

5.    Ordering  the Government pursuant to the order entered by the Tribal Court in the Tribal Court Actions, to recognize the Ayala Quorum Council as the Tribal Council of the Tribe;

6.    Awarding the Indians their Court Costs and Attorney's fees, and;

7.    Granting the Indians such further and necessary relief that the Court deems appropriate.

Date: September 17, 2013                    RAPPORT AND MARSTON


                                           By:    /s/ Lester J. Marston
                                                  Lester J. Marston, Attorney for the
                                                  Picayune Rancheria of the Chukchansi
                                                  Indians


Date: September 17, 2013                    RAPPORT AND MARSTON


                                           By:    /s/ David J. Rapport
                                                  David J. Rapport, Attorney for the
                                                  Chukchansi Indian Housing Authority