STUART F. DELERY
Assistant Attorney General

MICHAEL SITCOV
MATTHEW A. JOSEPHSON
Attorneys
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-9237
Facsimile: (202) 616-8470
Georgia Bar #367216
E-Mail: Matthew.A.Josephson@usdoj.gov

*Attorneys for Defendants Department of Housing and Urban Development*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Picayune Rancheria of Chukchansi Indians, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>United States Department of Housing and Urban Development, et al.,<br><br>Defendants. | CIV- 2:13-CV-01917-DGC<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

In their opposition to HUD's motion to dismiss, Plaintiffs continue to assert that every federal agency is required to independently determine, on a program by program basis, which of the competing factions of the Picayune Rancheria of Chukchansi Indians ("Tribe") constitutes the authorized Tribal government, and then disburse program benefits to that faction, even though the federal agency statutorily responsible for acknowledging Tribal governments – Department of Interior's Bureau of Indian Affairs ("BIA") – has not made a final decision resolving the representation dispute. This contention has no legal basis and this case therefore should be dismissed.[1]

**I. EVERY FEDERAL AGENCY IS NOT REQUIRED TO INDEPENDELTY ADJUDICATE A TRIBAL LEADERSHIP DISPUTE BEFORE THE BUREAU OF INDIAN AFFAIRS ISSUES A FINAL DECISION REGARDING THAT DISPUTE.**

Plaintiffs acknowledge that no federal agency or federal court has jurisdiction to resolve internal tribal disputes. Plfs.' Opp'n to Defs.' Motion to Dismiss and Reply in Supp. of Motion for Prelim. Inj. ("Plfs.' Opp'n") 1, ECF No. 28. Nonetheless, Plaintiffs contend that every federal agency has the legal obligation to independently recognize, on a program by program basis, an interim tribal government until an intra-tribal leadership dispute is resolved. *Id.* This contention has no legal basis.

Congress has specifically delegated authority to the BIA to manage "all Indian affairs" and "all matters arising out of Indian relations." 25 U.S.C § 2. And the BIA is specifically responsible for acknowledging tribal existence and resolving matters of tribal

---

[1] The parties previously stipulated to, and the Court approved, a briefing schedule whereby HUD was required to file an opposition to Plaintiffs' application for a temporary restraining order and motion for preliminary injunction and, if it chose to do so, a motion to dismiss on or before November 1, 2013. ECF Nos. 24 and 25. HUD timely filed its motion to dismiss, ECF No. 26, Plaintiffs opposed that motion, ECF No. 28, and HUD now offers this reply brief in support of its motion consistent with the timing requirements of Local Rule 7.2(d).

recognition. *See* Defs.' Mot. to Dismiss and Opp'n to Plfs.' Mot. Prelim. Inj. ("Defs.' Mot.") 9-10, 12, ECF No. 26-1. Thus, it is the *BIA* that has an obligation to recognize an interim tribal government before resolving a tribal election dispute, not HUD or any other federal agency. *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983) ("*The BIA*, in its responsibility for carrying on government relations with the Tribe, is obligated to recognize and deal with some tribal governing body in the interim before resolution of the election dispute.") (emphasis added). If Plaintiffs want the BIA to name an interim government, and for that decision to be effective immediately, then they can only seek that relief through the BIA's administrative process, which includes procedures for making a decision immediately effective, and for challenging official delay. *See* 25 C.F.R. §§ 2.6(a), 2.8(a).[2]

**II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER NAHASDA.**

In their opposition, Plaintiffs have reframed their NAHASDA claim, contending that HUD has exceeded its statutory authority by temporarily suspending access to the grant funds until the BIA finally resolves the Tribe's leadership dispute, or the Tribe itself can agree on a specific grant recipient. Plfs.' Opp'n 3. This claim is meritless.

NAHASDA specifically requires HUD to disburse the grant funds "directly to the *recipient* for the tribe." 25 U.S.C. § 4111(a)(2) (emphasis added). "Recipient" is defined as "an Indian tribe or the entity for one or more Indian tribes that is authorized to receive grant amounts under [NAHASA] on behalf of the tribe or tribes." 25 U.S.C. § 4103(19). Here, until the BIA resolves the Tribe's leadership dispute, HUD cannot know which individuals represent the Tribal government or the Tribe's designated entity – the

---

[2] Plaintiffs suggest, without any explanation, that *Nance v. EPA*, 645 F.2d 701, 711 (9th Cir. 1981) supports the proposition that every federal agency must independently designate, on a program by program basis, an interim tribal government until an intra-tribal leadership dispute is resolved. Plfs.' Opp'n 2. To say the least, *Nance* stands for no such proposition. *Nance* addressed a challenge to the Environmental Protection Agency's approval of an Indian tribe's redesignation of its air quality standards. *Id.* at 704. The decision has nothing to do with resolving a tribal leadership dispute.

Chukchansi Indian Housing Authority ("CIHA"). As a result, HUD has reasonably decided to temporarily revoke access to the funds until the identity of the authorized recipient is certain. HUD's agency action tracks its statutory obligation to ensure the grant funds are distributed to the authorized recipient. No statutory authority has been exceeded.[3]

## III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER THE DUE PROCESS CLAUSE.

Plaintiffs continue to argue that HUD violated their procedural due process rights because it did not provide formal notice and a formal hearing before temporarily revoking access to the grant funds. *See* Plfs.' Opp'n 5. This argument is meritless.

Procedural due process does not require a formal hearing in all circumstances. *See Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603 F.3d 1073, 1082-83 (9th Cir. 2010). Instead, the "'opportunity for informal consultation with designated personnel empowered to correct a mistaken determination constitutes a due process hearing in appropriate circumstances.'" *Id.* (citing *Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 16 n.17 (1978)). Nor does procedural due process require that the notice and opportunity to be heard occur before the deprivation. *Id.* at 1082 (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)). Instead, procedural due process "can take place through a combination of pre- and post-deprivation procedures." *Id.* (citation omitted).

Here, the Complaint, its exhibits, and the O'Neil Declaration all show that HUD has provided ample procedures, both before and after temporarily revoking access to the grant funds, to ensure that Plaintiffs could present their side of the story, satisfying any due process concerns. *See* Defs.' Mot. 10-12.

---

[3] Plaintiffs also are incorrect in suggesting that CIHA's status as the authorized recipient is somehow unquestioned. Plfs.' Opp'n 3. To the contrary, the identity of the authorized recipient is the fundamental issue in this case. As HUD Administrator Carolyn O'Neil clearly explains in her declaration, HUD has received conflicting information regarding the membership of the CIHA Board of Commissioners, with each faction claiming that different individuals are on the CIHA's Board. *See* O'Neil Decl. ¶¶ 4-6, ECF No. 26-2; *see also* Compl. ¶¶ 14-18, 22-23, ECF No. 1.

**IV. PRINCIPLES OF COMITY DO NOT REQUIRE HUD TO RECOGNIZE TRIBAL COURT ORDERS BEFORE THE BIA RESOLVES THE TRIBAL DISPUTE.**

In their initial motion, Plaintiffs argued that HUD and this Court should recognize and enforce two non-final, tribal court orders, which they claimed were valid, and declare the Ayala Faction the lawful governing body of the Tribe. Plfs.' Mot. for Prelim. Inj. 11-14, ECF No. 16-1; *see also* Compl. ¶¶ 60-69. In their response, Plaintiffs now ask this Court to recognize and enforce a different tribal court decision – a "final judgment" that Plaintiffs claim also recognizes the Ayala Faction as the authorized Tribal Council. *See* Plfs.' Opp'n 6-9; Marston Decl. & Ex. 1, ECF Nos. 28-6 and 28-7. Plaintiffs suggest that this judgment is entitled to recognition, even though there are conflicting tribal court decisions resulting from separate tribal courts set up by the competing factions. *See* Plfs. Opp'n 7-9.

The issue of whether one tribal court decision is entitled to recognition over another tribal court decision is not properly before the Court. If Plaintiffs think that these tribal orders and judgments support the Ayala Faction, then that should be argued to the BIA. *See Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of the Mississippi in Iowa*, 609 F.3d 927, 943 (8th Cir. 2010). There is no legal authority supporting Plaintiffs' position that they can bypass the BIA's recognition process simply because one tribal court has purportedly ruled in their favor.

**V. HUD HAS IMPLEMENTED NAHASDA IN A MANNER THAT FULFILLS ITS PURPORTED TRUST RESPONSIBILITIES TOWARDS THE TRIBE.**

Plaintiffs have clarified that their fiduciary duty claim is a recycled version of their NAHASDA claim, with NAHASDA proving the basis for the duty owed to the Tribe. *See* Plfs.' Opp'n 9-11. NAHASDA creates no enforceable fiduciary duties supporting a trust claim. *Marceau v. Blackfeet Housing Authority*, 540 F.3d 916, 928 (9th Cir. 2008); *Lummi Tribe of Lummi Reservation v. United States*, 99 Fed. Cl. 584, 598 n.12 (Fed. Cl. 2011). Nevertheless, because HUD has fulfilled its statutory duties under NAHASDA,

by ensuring that grant funds are accessed only by the authorized recipient under 25 U.S.C. § 4111(a), HUD has fulfilled any obligation it owes the Tribe with regard to the disputed funds.

**VI. PLAINTIFFS HAVE FAILED TO ESTABLISH IRREPARABLE INJURY.**

Plaintiffs contend they have shown irreparable harm for "four reasons." See Plfs.' Opp'n 5-6. All four arguments lack merit.[4]

Plaintiffs first argue that CIHA can establish irreparable harm by alleging that low income Tribal members might be unable to obtain housing assistance. In support, they cite, without explanation, cases where a plaintiff established standing to assert the rights of non-parties in light of the unique relationship between that plaintiff and the non-party.[5]

These cases do not support Plaintiffs' associational standing. As HUD previously explained, "when members of an association hold divergent views on an issue, or have conflicting interests, individual participation in a lawsuit is necessary, and the association may not rely on third-party standing." *KickapooTribe of Okla. v. Lujan*, 728 F. Supp. 796 n.8 (D.D.C. 1990) (citing *Harris v. McRae*, 448 U.S. 297, 321 (1980)); *see also id.* at 791, 795-96. Here, Tribal members disagree on the fundamental issue of what faction represents the authorized Tribal government and the CIHA's Board of Commissioners. In light of these divergent views, Plaintiffs, which represent the views of only one faction, cannot sue on behalf of the entire Tribe or the CIHA.

---

[4] In Plaintiffs' opposition, which also serves as a reply in support of their motion for preliminary injunction, Plaintiffs have raised new legal and factual arguments in support of their claims of irreparable harm, including several new declarations and other exhibits. *See* Plfs.' Opp'n 5-6; ECF Nos. 28-1 through 28-7. HUD did not have an opportunity to respond to these arguments in its previous filing, and therefore responds to these arguments here.

[5] *See Seneca Nursing Home v. Kansas State Bd. of Soc. Welfare*, 490 F.2d 1324, 1328-29 (10th Cir. 1974) (holding that plaintiff, a nursing home, has standing to assert the interests of its patients in light of their special relationship); *Harmony Nursing Home, Inc. v. Anderson*, 341 F. Supp. 957, 959 (D. Minn. 1972) (same); *Barrows v. Jackson*, 346 U.S. 249, 257 (1953) (holding that Caucasian seller of real estate could challenge a racially discriminatory restrictive covenant by raising the constitutional rights of the non-Caucasian purchaser).

Second, even if associational standing were appropriate in this case, Plaintiffs have failed to show that a specific tribal member will suffer irreparable harm unless the Court grants a preliminary injunction. Plaintiffs are correct that, if an individual can establish that he or she faces the immediate threat of eviction and the realistic prospect of homelessness after the eviction, then this showing can constitute irreparable harm and support enjoining the eviction. *See Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989). But Plaintiffs have not demonstrated that a specific tribal member faces the immediate threat of eviction and will thereafter be homeless unless the Court immediately orders HUD to disburse grant funds to the Ayala Faction. Indeed, the only time Don Ctibor, who represents himself to be the Executive Director of the CIHA, mentions eviction is where he asserts in conclusory fashion that two unnamed Tribal members have "applied for eviction prevention assistance" and now "face eviction." Ctibor Decl. ¶ 7, ECF No. 13-13. But Mr. Ctibor has provided no factual details showing that this threat of eviction is likely or imminent. For example, in addition to not identifying the two members, he has provided no information showing that the unidentified landlord will continue to charge full rental rates, that these two unidentified Tribal members will be unable to pay the rate, and that the landlord actually intends to evict these two members for nonpayment of the rental rate. *See Park Vill. Apartment Tenants Ass'n*, 636 F.3d at 1159. In short, Plaintiffs have failed to establish a factual basis for the finding that a specific Tribal member will lose his or her home unless the court orders HUD to provide grant funds to the Ayala Faction.

Third, Plaintiffs cannot establish irreparable harm by contending that they might be permanently deprived of the grant funds. As HUD previously explained, monetary injury is not irreparable harm because adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation. *See* Defs.' Mot. 15. Plaintiffs failed to address this well-established principle in each of their filings. Mr. Carl Casey, who represents himself to be the Tribe's Finance Director, has confirmed that the

Tribe's Casino provides *a monthly payment of $1 million* to the Tribe for the funding of essential government functions. *See* Casey Decl. ¶ 3, ECF No. 28-1. While Mr. Casey avers that, "[b]ased on the Tribe's present budget," the Tribal Government does not have "adequate money to fund CIHA to continue operating its housing programs," *id.* ¶ 6, he does not contend that the Tribe's housing program will be permanently and completely destroyed. Nor does he explain why the Tribe cannot adjust the present budget, which is quite substantial, to fund, on a temporary basis, the very specific housing services that Plaintiffs claim are essential.

Fourth, Plaintiffs cannot establish irreparable harm by merely alleging that their procedural due process rights have been infringed. The Ninth Circuit has never held that irreparable harm "inevitably flows from deprivations of procedural due process." *Prison Legal News v. Columbia Cnty.*, No. 3:12-CV-00071-SI, 2013 WL 1767847, at *23 (D. Or. Apr. 24, 2013). The "case law is replete with examples of courts finding no irreparable harm despite the allegation of a constitutional violation where the only remedy would be monetary in nature." *Hamlyn v. Rock Island Cnty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 163 (C.D. Ill. 1997) (collecting cases). In any event, Plaintiffs have failed to show that their procedural rights have actually been violated. *See* Section III *supra*; Defs.' Mot. 10-12.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' Motion to Dismiss and Deny Plaintiffs' Application for a Temporary Restraining Order and Motion for a Preliminary Injunction.

Respectfully Submitted this 22nd day of November, 2013,

STUART F. DELERY
Assistant Attorney General
Civil Division

/s/ *Matthew A. Josephson*
MICHAEL SITCOV
MATTHEW A. JOSEPHSON
Matthew.A.Josephson@usdoj.gov
Attorneys

U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-9237
Facsimile: (202) 616-8470
Georgia Bar #367216

*Attorneys for Defendant Department of Housing and Urban Development*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2013, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Lester J. Marston
David J. Rapport
405 West Perkins Street
Ukiah, CA 95482
Marston1@pacbell.net
drapport@pacbell.net
*Attorneys for Plaintiff*

/s/Matthew A. Josephson
Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave. NW
Washington, D.C. 20530
Telephone: (202) 514-9237
Facsimile: (202) 616-8470
Georgia Bar #367216