WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Picayune Rancheria of Chukchansi Indians, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Sandra B Henriquez, et al., <br><br> Defendants. | No. CV-13-01917-PHX-DGC <br><br> **ORDER** |

Defendants have filed a motion to dismiss Plaintiffs' claims. Doc. 26. The motion is fully briefed, and neither party has requested oral argument. Docs. 28, 29. For the reasons stated below, the Court will dismiss this action.

**I.     Background.**

The Picayune Tribe of Chukchansi Indians (the "Tribe") is a federally recognized Indian tribe. Doc. 1 at 5. The Chukchansi Indian Housing Authority ("CIHA") is the housing entity established by tribal ordinance to operate the tribe's federally assisted housing programs. *Id.* at 7. CIHA operates as a non-profit tribal corporation, governed by a Board of Commissioners appointed by the Tribal Council. *Id.* CIHA's purpose is to provide affordable housing to low income tribal members through lease-to-own houses, low income rentals, housing and utility assistance grants, and housing repairs. *Id.* at 8.

To fulfill its mission, CIHA administers annual block grants from the Southwest Office of Native American Programs ("SWONAP") of the United States Department of

Housing and Urban Development ("HUD"). *Id*. at 2. These grants allow CIHA to provide affordable housing to low income tribal members. *Id*. The block grants are provided through the Native American Housing Assistance and Self-Determination Act of 1996 ("NAHASDA"), 25 U.S.C. § 4101 *et seq*., which requires that grants be paid by HUD "directly to the recipient for the tribe." 25 U.S.C. § 4111(a)(2). Individuals authorized to receive the funds are given access to an automated Line of Credit Control System ("LOCCS"), and can access and withdraw NAHASDA funds through that system. The Tribe received block grant funding for 2013 in the amount of $954,966. Doc. 1 at 7; Doc 26-1 at 4. Because unexpended funds from previous years do not expire, the Tribe currently has unexpended funds in LOCCS totaling $2,956,212.88.

On January 24, 2013, a leadership dispute arose among the duly elected members of the Tribal Council, and various members of the Tribal Council attempted to suspend other members. Doc. 1 at 6. At the time, members of the Tribal Council included Nancy Ayala, Reggie Lewis, Tracey Brechbuehl, Karen Wynn, Charles Sargosa, Chance Alberta, and Carl Bushman. *Id*. Specific Tribal and CIHA officials had access to LOCCS to administer the HUD funds, including Nancy Ayala, Helen Flores, Michael Wynn, and Don Ctibor. *Id*. at 9.

Three separate factions emerged from the leadership dispute, each claiming to represent the government of the Tribe. The factions were led respectively by Nancy Ayala ("Ayala faction"), Reggie Lewis ("Lewis faction"), and Morris Reid ("Reid faction"). The different factions each appointed different tribal councils and attempted to operate as the legitimate government of the Tribe. As a result of requests from different factions for recognition, the Bureau if Indian Affairs ("BIA") issued a letter on May 16, 2013, recognizing the tribal council that was elected on December 1, 2012, which included Nancy Ayala, Reggie Lewis, Tracy Brechbuehl, Karen Wynn, Chance Alberta, Charles Sargosa and Carl Buzz Bushman. Doc. 26-3 at 54. That determination by the BIA was subsequently appealed to the Interior Board of Indian Appeals ("IBIA"). IBIA No. 13-045. No final decision has been issued by IBIA. *See* Doc. 26-4 at 5.

1  In May 2013, HUD was contacted by the three factions separately. Each claimed to represent the Tribe and submitted documentation, including Tribal resolutions, in support of its claim. Doc. 1-1 at 1. To identify the faction with which it should deal, HUD contacted the BIA, the federal entity statutorily tasked with "management of all Indian affairs and of all matters arising out of Indian relations." 25 U.S.C. § 2. The BIA advised HUD that the intra-tribal dispute was currently the subject of an appeal and that, pursuant to 25 C.F.R. § 2.6, there was no final BIA determination regarding the appropriate tribal government. Doc. 26-4 at 5.

As a result, HUD informed CIHA, with copy to the heads of all three factions, that "all current LOCCS users are hereby prohibited from accessing LOCCS," and that it was "revoking its approval of all previously approved HUD-27054 forms submitted on behalf of CIHA" and denying "Nancy Ayala, Helen Flores, Michael Wynn, and any other member of CIHA's Board of Commissioners or staff . . . continued access to LOCCS." Doc. 1-1. HUD emphasized in the letter that it was not suspending the Tribe's funds, but rather revoking access to the LOCCS system, and that access by new users would be allowed if HUD became "satisfied that CIHA's Board of Commissioners is in fact authorized and designated by a recognized Tribal government." *Id.*

Upon receiving the August 22, 2013 letter, David Rapport, an attorney purporting to represent CIHA, contacted HUD concerning CIHA's access to LOCCS. Doc. 1-2. In an email dated August 29, 2012, Rapport argued that Helen Flores, Michael Wynn, and Orianna Walker were appointed to the CIHA Board of Commissioners for two year terms, from March 15, 2012 to February 24, 2014, and that "[t]he efforts by the Lewis Faction to remove them and appoint replacements" should be disregarded. *Id.* The email also argued that the tribal council, as it existed at the last undisputed election, had taken no action to remove those appointed Commissioners and had also appointed Cheryl Alemann and David Jiminez to CIHA's Board. *Id.* The letter asked HUD to "continue to recognize the CIHA officials who were authorized to access LOCCS before August 22, 2013," and to provide CIHA with notice and opportunity for a hearing prior to revoking

such access. *Id*. Rapport also asked whether there was "an administrative remedy that would afford CIHA an opportunity for a hearing before its access to LOCCS [was revoked]." *Id*. Rapport contacted HUD again on September 9, 2013, arguing that Helen Flores, Nancy Ayala, and Michael Wynn had approved access to LOCCS before August 22, 2013, and that their access should be restored. Doc. 1-3.

After these communications with HUD failed to resolve the situation, CIHA, represented by Rapport and Lee Marston, initiated this suit against HUD, SWONAP, and their respective representatives on behalf of itself and the Tribe. Doc. 1. The suit asserts the following claims: (1) HUD suspended funds in violation of NAHASDA because it has not shown that CIHA failed to "comply substantially" with statutory requirements; (2) HUD's suspension of funding violated the Administrative Procedures Act because it was arbitrary, capricious and contrary to applicable law; (3) HUD violated Plaintiff's due process rights under the Fifth Amendment by failing to provide proper notice or a hearing prior to revoking CIHA's access to LOCCS; (4) HUD violated federal common law by failing to acknowledge the tribal council elected at the last undisputed election; (5) Plaintiffs are entitled to declaratory relief regarding the recognition of tribal court orders which recognize the Ayala faction as the lawful governing body of the Tribe; and (6) the government breached its fiduciary duty to the Tribe under NAHASDA.

On September 27, 2013, Plaintiff filed a motion for temporary restraining order and preliminary injunction, seeking to have access to LOCCS restored "for the CIHA officials who had that access on and before August 22, 2013." Doc. 13-1. The individuals to be granted LOCCS access under the motion are Nancy Ayala, Helen Flores, Michael Wynn, and Don Ctibor, CIHA's Executive Director. *Id*. at 9. Plaintiffs thus seek to have the Ayala faction granted exclusive access to the HUD funds.

**II.    Jurisdiction.**

Federal courts lack jurisdiction to decide intra-tribal disputes. *Sac & Fox Tribe of the Mississippi in Iowa, Election Bd. v. Bureau of Indian Affairs*, 439 F.3d 832, 835 (8th Cir. 2006) (holding that jurisdiction to resolve internal tribal disputes lies with Indian

tribes and not district courts); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (explaining that Indian tribes remain a separate people with power to regulate their internal and social relations); *Lewis v. Norton,* 424 F.3d 959, 960 (9th Cir. 2005) (recognizing that Indian tribes are distinct, independent political communities that retain their natural rights in matters of local self-government). Defendants claim that Plaintiffs lack standing, and this Court lacks subject matter jurisdiction, "because redressing Plaintiffs' alleged injury would require resolution of nonjusticiable intratribal matters." Doc. 26-1 at 3. Specifically, Defendants argue that resolution of the claims would require this Court to recognize the Ayala faction over other factions. The Court agrees.

### A.     Standing.

To invoke the Court's jurisdiction, Plaintiffs must have suffered a concrete, particularized injury which is actual or imminent, there must be a causal connection between the injury and Defendants' actions, and it must be likely that the injury will be redressed by a favorable decision in this case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A party seeking to invoke the Court's jurisdiction has the burden of showing that it satisfies these standing requirements. *Id.* at 561; *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009).

Plaintiffs have suffered injury from HUD's action, and their injury will be redressed by the Court's order, only if Plaintiffs are the rightful representatives of the Tribe. If the Lewis faction possesses the legal right to govern the Tribe, control CIHA, and access HUD funds, then Plaintiffs have not been injured by Defendants' actions and this Court's order will not redress their alleged injuries. Because Plaintiffs cannot show they have standing to pursue this action without asking the Court to resolve the very dispute it lacks jurisdiction to address, Plaintiffs cannot meet their threshold burden of invoking the Court's jurisdiction. *See Timbisha Shoshone Tribe v. Kennedy*, 687 F. Supp. 2d 1171, 1184 (E.D. Cal. 2009) ("Because this Court cannot determine the issue of standing without resolution of the legitimacy of disenrollment, Plaintiffs have failed to sustain their burden to demonstrate that they have standing to pursue this action.").

1  Several cases support this conclusion. In 2006, a tribal faction brought suit to
2  challenge a final BIA determination regarding which faction's election was legitimate.
3  *Sac & Fox Tribe of the Mississippi in Iowa*, 439 F.3d 832 (8th Cir. 2006). The Eighth
4  Circuit held that "[t]o reach the merits of this case, the district court would necessarily
5  have to construe and apply tribal law to determine whether an election board has
6  authority to file suit on behalf of the Tribe. The district court would then have to
7  determine which election board is the proper plaintiff." *Id.* at 835. Because such
8  intervention in tribal affairs would be impermissible, the court held that dismissal for lack
9  of subject matter jurisdiction was proper. *Id*. ("[T]he district court lacked jurisdiction to
10 determine which tribal faction rightfully controlled the Sac & Fox Tribe of the
11 Mississippi in Iowa.").

12 In *Timbisha Shoshone Tribe*, 687 F. Supp. 2d at 1184, the district court considered
13 a request for a TRO brought by one tribal faction against another that had disenrolled
14 members of the tribe. The court declined to consider the case, noting that even "[t]o
15 determine whether Plaintiffs have standing, . . . the Court must interject itself into the
16 internal affairs of the tribe." *Id*. Two years later, in considering another request for a
17 preliminary injunction challenging the BIA's determination of which tribal faction was
18 the legitimate tribal government, the court again noted that "to determine whether
19 Plaintiffs here have properly filed suit on behalf of the Tribe, it would have to entertain
20 the merits of the parties' election and disenrollment issues." *Timbisha Shoshone Tribe v.*
21 *U.S. Dep't of the Interior*, 2:11-CV-00995-MCE, 2011 WL 1883862, *6 (E.D. Cal. May
22 16, 2011). The court declined to do so.

23 Unlike *Sac & Fox* and the *Timbisha Shoshone* cases, this action does not concern a
24 BIA determination of tribal control, as a final BIA determination has not yet been made.
25 But this fact makes the Court's lack of subject matter jurisdiction even more certain. If
26 the Court would not have jurisdiction to review a tribal governance decision by the BIA,
27 as *Sac & Fox* and *Timbisha Shoshone* hold, it certainly cannot exercise jurisdiction to
28 make such a decision on its own. This is particularly true when that tribal governance

- 6 -

issue is currently pending before the IBIA, no final decision has been made, and the BIA is not a party to this action.[1]

### B. Plaintiffs' Cases and Arguments.

Plaintiffs argue that this suit does not require the Court to resolve an intra-tribal dispute, but simply to recognize an interim government, which they argue is required for purposes of inter-governmental relations with tribes under *Goodface v. Grassrope*, 708 F.2d 335 (8th Cir. 1983). Plaintiffs argue that *Goodface* stands for the proposition that "federal agencies, not just the BIA, have an obligation to recognize on an interim basis some tribal government until the leadership dispute is resolved." Doc. 28 at 2.

In *Goodface*, the district court had reviewed a final BIA decision that declined to recognize either faction of a tribe. The district court ordered the BIA to recognize one faction or the other on an interim basis. *Id*. at 336-37. On appeal, the Eighth Circuit relied on BIA's "responsibility for carrying on government relations with the Tribe" in holding that the district court properly ordered the BIA to recognize an interim tribal government. *Id*. ("The BIA, in its responsibility for carrying on government relations with the Tribe, is obligated to recognize and deal with some tribal governing body in the interim before resolution of the election dispute."). This case is very different. Plaintiffs do not challenge a refusal of the BIA to recognize a tribal government – the BIA is not

---

[1] At least one case has suggested that not all disputes between a divided Indian tribe and a federal agency require the resolution of intra-tribal disputes. *See In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749 (8th Cir. 2003). In this case, where different factions were claiming rights to tribal governance, the Eighth Circuit held that federal courts may have jurisdiction over "disputes concerning . . . other matters subject to federal regulation, or intergovernmental relations." *Id* at 766. The Eighth Circuit acknowledged that district courts do not have jurisdiction to resolve an intra-tribal dispute, but nonetheless examined the specific federal statutes and regulations under which the plaintiff's claims were brought – the Indian Gaming Regulatory Act and the Racketeer Influenced and Corrupt Organizations Act – to determine whether the plaintiffs had sufficiently stated a cause of action under those statutes. *Id*. The Eighth Circuit ultimately found that resolution of the claims would require the district court to decide which tribal government was legitimate, something for which it lacked subject matter jurisdiction. The Court is not persuaded that it could rule on any of Plaintiffs' claims in this case without making the same prohibited decision – any order awarding the Ayala faction the right to access HUD funds would necessarily result in the Court preferring one disputed tribal faction over another.

- 7 -

even a party to this action. Rather, Plaintiffs seek to impose on an entirely different federal agency – HUD – the duty *Goodface* imposed on the BIA. But HUD is not charged with recognizing tribal governments as is the BIA, and the Court cannot conclude that *Goodface* imposes any such duty on HUD.

Plaintiffs cite *Nance v. E.P.A.*, 645 F.2d 701, 711 (9th Cir. 1981), in support of this argument, but *Nance* is not helpful. *Nance* did state that "any Federal government action is subject to the United States' fiduciary responsibilities toward the Indian tribes," but it did not impose a duty to recognize interim tribal governments on federal agencies other than the BIA. *Id*. *Nance* addressed whether the EPA fulfilled its trust obligations by sufficiently consulting with a tribe before altering a clean air standard. It did not address matters of tribal governance.

Plaintiffs argue that CIHA is a separate entity from the tribal government, and that HUD and the Court must continue to recognize the last formally recognized tribal government – and the CIHA board that it appointed – until the BIA and the Tribe resolve the intra-tribal dispute. Doc. 28 at 4. But CIHA is not an entity separate from the factions vying for control of the Tribe. The Ayala faction claims to control CIHA, while the Lewis faction has appointed an entirely different set of board members to govern CIHA. Control of CIHA is therefore embroiled in the intra-tribal dispute this Court cannot resolve.

The same is true of the tribal court judgment upon which Plaintiffs ask the Court to rely. Plaintiffs acknowledge that the various tribal factions have established their own tribal courts and have obtained rulings in their favor from those courts. Doc. 28 at 8-9. Even if a ruling of a tribal court would be entitled to deference (an issue the Court need not decide), identifying the valid tribal court would require a prohibited inquiry into the claims of the competing tribal factions.

**III.   Conclusion.**

Plaintiffs cannot meet their burden of showing that they have been injured by Defendants' actions or that their injuries will be redressed by this Court's order without

asking the Court to resolve matters of intra-tribal governance. Plaintiffs therefore cannot show that they have standing to pursue this action. The Court finds Plaintiffs' arguments and authorities unpersuasive, and elects to follow cases that have dismissed similar claims.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 26) is **granted**.
2. The TRO hearing set for January 7, 2014, is **vacated**.
3. The Clerk is directed to terminate this action.

Dated this 30th day of December, 2013.

_____
David G. Campbell
United States District Judge